

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Hon. Edgar A. Maddox
County Attorney
Palo Pinto, Texas

Dear Sir:

Opinion No. O-3706
Re: Whether the Mineral Wells
Investment Company is a
"dealer in exchange," to
which Article 7165, R. C. S.,
would apply

    In your letter of June 10, 1941, you request our opinion as to whether the Mineral Wells Investment Company is a "dealer in exchange" under Article 7165, Revised Civil Statutes, and advising us that it is a corporation engaged "in the business of buying purchase payment notes on automobiles and other secured notes." We have inspected the charter of this corporation and find its purpose stated in Article 2 thereof, which reads as follows:

> "Art. 2. This association is formed for the purpose of accumulating and lending money, purchasing, selling and dealing in notes, bonds and securities, but without banking privileges; of acting as trustee under any lawful trust, committed to it by contract and as agent for the performance of any lawful act, as provided by Section 49 of Article 1302 of the Revised Statutes of Texas."

    We have reached the conclusion that the company is not a "dealer in exchange" in contemplation of this statute. The quoted term is nowhere defined in the statutes, nor is the word "exchange." However, in the Negotiable Instruments Act, we do find the definition of a "bill of exchange." Sec. 126, of Art. 5940, Revised Civil Statutes, reads:

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

Hon. Edgar A. Maddox, page 2

"A bill of exchange is an unconditional order in writing addressed by one person to another, signed by the person giving it, requiring the person to whom it is addressed to pay on demand or at a fixed or determinable future time a sum certain in money to order or to bearer."

Sections 184 and 185, of Article 5947, Revised Civil Statutes, (also a part of the Negotiable Instruments Law) read as follows:

"A negotiable promissory note within the meaning of this Act is an unconditional promise in writing made by one person to another signed by the maker engaging to pay on demand, or at a fixed or determinable future time, a sum certain in money to order or to bearer. Where a note is drawn to the maker's own order, it is not complete until indorsed by him.

"A check is a bill of exchange drawn on a bank payable on demand. Except as herein otherwise provided, the provisions of this act applicable to a bill of exchange payable on demand apply to a check."

In Vol. 7, Am. Jur., at page 790, we find the following:

"Bills of exchange or drafts constitute commercial paper in the strictest sense. The original and fundamental idea and purpose of such an instrument is that the drawer has funds or effects in the hands of the drawee of which the drawer wishes to avail himself at the place where the bill is made, the drawer being the party primarily interested in, and benefited by, the transaction. By this instrument of exchange the drawer appropriates the fund, actual or anticipated, in the drawee's hands and receives the consideration for the appropriation from the payee to whom the instrument of appropriation is delivered. The office of the instrument is to collect for the drawer from the drawee, residing in another place, money to which the former may be entitled; and although drafts sometimes are used for raising money, that is not the necessary or ordinary purpose for which they are employed."

Hon. Edgar A. Maddox, page 3

And, at page 795 of the same volume of American Jurisprudence, we find this:

"Various definitions of a promissory note have been given. In general terms, it may be defined to be a written promise by one person to pay to another person therein named or his order, or to the bearer, a fixed sum of money, at all events, and at a time specified therein, or at a time which must certainly arrive."

While bills of exchange and promissory notes are much alike, there are differences between them, thus recognized by our statutes and by the common law. As we understand, the corporation in question engages in the buying of notes, nothing else. If so, it does not deal with bills of exchange, they being different instruments. Mineral Wells Investment Company was incorporated under clause No. 49 of Article 1302, Revised Civil Statutes, reading as follows:

"For any one or more of the following purposes: To accumulate and lend money, purchase, sell and deal in notes, bonds and securities, but without banking and discounting privileges; to act as trustee under any express trust committed to them by contract and as agent for the performance of any lawful act."

We find authorization in clause No. 55, Article 1302, to incorporate "to buy, sell . . . or otherwise deal in . . . bills of exchange." Thus, in the article of our statutes setting forth the purposes for which private corporations may be formed, we find one section authorizing the formation of corporations to "purchase, sell and deal in notes," and another section authorizing the organization of corporations to "buy, sell or otherwise deal in bills of exchange." In Webster's New International Dictionary, one of the definitions given of the noun "exchange" is: "a bill of exchange." We can ascribe no other meaning to the word "exchange," as used in Article 7165, than that of bill of exchange, so that the term "dealer in exchange," as used in that statute, means a dealer in bills of exchange.

Hon. Edgar A. Maddox, page 4

Other questions relating to dealers in exchange are submitted by you, but they hinge on a different answer from the one which we have given to the above question and need not be noticed in this opinion.

In your same letter you also request our opinion in response to these questions:

"Second: In view of Article 827 D, Penal Code, regulating transportation for persons for hire; transportation agencies for obtaining co-travelers to share expenses; licenses and the decisions thereon. Is it unlawful for an individual who has a driver's license in accordance with the existing laws of the State of Texas and whose automobile is equipped with ordinary passenger plates and no others to carry passengers for hire from one point in the State of Texas to another point in the State of Texas? Would the opinion be different if the individual had a chauffeur's license issued under the existing laws of the State of Texas? Would the first opinion on this question be different if the automobile is equipped with commercial plates?"

You have our opinion No. 0-3770 and we enclose copies of Numbers 0-1430 and 0-1932. Those opinions may sufficiently dispose of these questions asked by you, depending upon facts which do not appear in your letter. If such opinions do not meet your needs, we will be glad to hear from you in further detail as to the operations being conducted and in which you are interested.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By _Glenn R. Lewis_

Glenn R. Lewis
Assistant

GRL:AMM

ENCLOSURES

APPROVED AUG 21, 1941

ATTORNEY GENERAL OF TEXAS

APPROVED
OPINION
COMMITTEE
BY
CHAIRMAN